```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
              CIVIL NO. 20-823(DSD/BRT)
```

Robert Francis Gelschus,
Personal Representative of
Estate of Sally Aileen Hogen,

      Plaintiff,

v.                                                    **ORDER**

Clifford Charles Hogen,
an individual,

      Defendant.

      Francis J. Rondoni, Esq. and Chestnut Cambronne, PA, 100 Washington Avenue Sorth, Suite 1700, Minneapolis, MN 55401, counsel for plaintiff.

      Laura M. Weber, Esq. and Felhaber Larson, 220 South 6th Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Robert Francis Gelschus, personal representative of the estate of Sally Aileen Hogen, and defendant Clifford Charles Hogen. Based on a review of the file, record, and proceedings herein, and for the following reasons, the defendant's motion is granted and plaintiff's motion is denied.

**BACKGROUND**

This dispute arises out of the distribution of decedent Sally Aileen Hogen's assets in her Honeywell 401(k) Plan (Plan).

Plaintiff Robert Francis Gelschus is the personal representative of Sally Hogen's estate. Gelschus Dep. at 17:8-10. Defendant Clifford Hogen is Sally Hogen's ex-husband and was the Plan beneficiary during their marriage. Hogen Dep. at 18:8-10; 21:10-13; ECF No. 86, at 4.

On June 26, 2002, the Hogens divorced. Hogen Dep. at 21:10-13. They negotiated and signed a marital termination agreement (MTA), which was incorporated into the divorce decree issued by the Hennepin County District Court. Id. at 21:21-23; Weber Aff. Ex. 5. Plaintiff alleges that the parties agreed in the MTA that Clifford Hogen would no longer be the beneficiary of the Plan. Defendant, however, contends that the MTA is silent as to the beneficiary designation and that he and Sally Hogen agreed in oral negotiations that he would be retained as beneficiary in exchange for his including other accounts in the divorce settlement. Hogen Dep. at 26:5-16.

In May 2008, Sally Hogen submitted a change of beneficiary form to Honeywell in an apparent attempt to remove Clifford Hogen as beneficiary. Weber Aff. Ex. 6. The submitted form, however, did not comply with the Plan's technical requirements.[1] Id.

---

[1] Sally Hogen indicated on the form that three individuals were each to receive 33 1/3 percent of the Plan's funds. The Plan, however, required that beneficiary interests be whole percentages. Weber Aff. Ex. 6.

Because the form did not satisfy the requirements, Honeywell did not remove Clifford Hogen as beneficiary.[2] Id. Ex. 7. The parties dispute whether Sally Hogen received notice from Honeywell that the form was insufficient, but records indicate that Honeywell called Hogen and left a message. Id. In any event, it appears that Sally Hogen took no further action regarding the beneficiary designation.

On March 27, 2019, Sally Hogen passed away. Hogen Dep. at 37:9-16. Honeywell contacted defendant by mail to inform him that he was the named beneficiary of the Plan. Weber Aff. Ex. 11. Plaintiff, however, disputed the designation, sent Honeywell the divorce decree, and requested that the benefits be paid to the estate. Id. Ex. 13. Honeywell nevertheless paid the Plan benefits to Clifford Hogen in December 2019. Id. Ex. 12, at 5.

On December 27, 2019, plaintiff formally challenged Honeywell's determination that Clifford Hogen was the beneficiary. Id. Ex. 16. Honeywell denied plaintiff's claims, finding that Sally Hogen's attempt to change beneficiaries had been ineffective

---

[2] The Summary Plan Description allows Plan participants to designate beneficiaries only by "properly completing and submitting, prior to [their] death, a Beneficiary/Consent Designation Form[.]" Hill Decl. Ex. B., at 9. Moreover, the Plan participant has the responsibility to "review and update [their] Beneficiary designation as appropriate in connection with any life events ... including ... divorce ... of any intended beneficiaries." Id. The Plan also "prescribe[s] the form for the written ... Beneficiary designation[.]" Id. Ex. A § 13.1.

3

and that the divorce decree had no impact on the beneficiary designation.³ Id. Ex. 17. Plaintiff appealed the decision, but Honeywell's Pension and Savings Plan Appeals Committee denied that appeal. Id. Ex. 18; id. Ex. 19.

After exhausting administrative remedies, plaintiff filed suit on March 27, 2020, naming both Honeywell and Clifford Hogen as defendants. On April 6, 2021, the court dismissed Honeywell from the case, finding the Employee Retirement Income Security Act of 1974 (ERISA) governed the dispute and that Honeywell did not breach its fiduciary duties or its duties under ERISA's "plan documents rule." See ECF No. 73.

Now, both plaintiff and the remaining defendant, Clifford Hogen, move for summary judgment. At its core, plaintiff's argument centers on the claim that defendant agreed to waive his status as beneficiary in the MTA and his acceptance of the benefits violated that agreement. The crux of defendant's argument is that, as a threshold matter, plaintiff lacks standing, and if the court finds otherwise, that he never waived his right to remain beneficiary.

---

³ Honeywell also notified Clifford Hogen that there was a dispute over the distribution of the benefits and instructed him to safeguard the distribution until the dispute could be resolved. Id. Ex. 11.

4

**DISCUSSION**

**I.   Standard of Review**

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial; that is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 249-50; Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of its claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II. Preemption of State Law Claims

The court first considers whether plaintiff's claims are preempted by ERISA. ERISA preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). This preemption provision is expansive. See Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997). A state law "relates to" an employee benefit plan covered by ERISA if it has a connection with or references such a plan. Id.

Here, the court previously found that ERISA governed the dispute as it related to Honeywell, the Plan administrator. ECF No. 73. That finding, however, does not end the inquiry for the claims against Clifford Hogen. Even if ERISA governs how a plan administrator must disburse account proceeds, a court may consider claims that attempt to recover plan proceeds "once those proceeds have been distributed." Francis v. Donovan, No. 06-10080, 2006 WL 481672, at *3 (E.D. Mich. Feb. 28, 2006); see also Martens v. Hogan, No. 17-5169, 2018 WL 1865931, at *2-3 (D. Minn. Apr. 18, 2018) (finding that claims "relate[ed] to legal obligations separate from ERISA" are not preempted).[4]

---

[4] In Martens, the court permitted claims for breach of contract, conversion, and unjust enrichment to go forward after finding that ERISA's application to the plan administrator did not preempt state law claims against the fund's beneficiary. 2018 WL 1865931, at *2-3.

6

Here, plaintiff argues its state law claims against defendant remain viable despite ERISA's application to Honeywell.[5] Defendant counters that although ERISA may not preempt all state law claims, plaintiff's claims in this case are preempted because they seek to modify a plan beneficiary designation, a remedy expressly preempted by ERISA.

The court finds that to the extent that plaintiff asks the court to use its powers of equity to give effect to decedent's attempt to change her beneficiary status, the claims are preempted. See ECF No. 73. Plaintiff's breach of contract, unjust enrichment, conversion, and civil theft claims, however, have a separate basis. These claims allege that defendant contractually waived his status as Plan beneficiary in the MTA. Because these claims arise out of a contract between private parties, they are not preempted by the earlier finding that ERISA applied to Honeywell.

**III. Standing**

The second issue is whether plaintiff, as administrator of Sally Hogen's estate, has standing to bring the claims. A plaintiff in federal court based on diversity of citizenship must

---

[5] Plaintiff alternatively frames defendant's conduct for the unjust enrichment, conversion, and civil theft claims as "wrongful" either 1) because decedent intended to remove him as the beneficiary, or 2) because he accepted and continues to retain the benefits despite allegedly agreeing not to claim them. The court construes the basis of the claims as alleging that defendant violated his agreement not to claim the benefits.

7

"meet[] the 'case or controversy' requirements of article III ... and also ha[ve] standing to sue under the relevant state law." Wolfe v. Gilmour Mfg. Co., 143 F.3d 1122, 1126 (8th Cir. 1998) (citation omitted).  Under Minnesota law, "[a] party may acquire standing either as the beneficiary of a statutory grant of standing or by suffering an 'injury-in-fact.'"  Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 916 N.W.2d 491, 496 (Minn. 2018) (citing Webb Golden Valley, LLC v. State, 865 N.W.2d 689, 693 (Minn. 2015)).

In the probate context, Minnesota law specifies that "a personal representative of a decedent domiciled in [Minnesota] at death has the same standing to sue ... as the decedent had immediately prior to death."  Minn. Stat. § 524.3-703(c).  Thus, a personal representative can only bring claims on behalf of the estate if the claim accrued before decedent's death.

Accrual of a cause of action occurs when "a plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." Frederick v. Wallerich, 907 N.W.2d 167, 173 (Minn. 2018) (citations omitted). Thus, accrual "requires the existence of operative facts supporting each element of the claim."  Sec. Bank & Tr. Co., 916 N.W.2d at 496.

Defendant argues that plaintiff lacks standing because none of the claims accrued until after decedent's death.  Plaintiff

8

counters by offering numerous examples of cases in which federal courts permitted claimants to proceed with claims against beneficiaries. As defendant points out, however, only one of those cases proceeded under the Minnesota statute that limits a personal representative's ability to bring claims. Further, in Martens, the one case proceeding under Minnesota law, neither party raised, and the court did not analyze, standing. 2018 WL 1865931, at *3.

The court's analysis in Security Bank & Trust Co. v. Larkin, however, is instructive. 916 N.W.2d at 491. In assessing a personal representative's claim, the court considered the implications of Minn. Stat. § 524.3-703. Id. at 497-500. The court found that the "plain, unambiguous" text required that the decedent had "standing to bring ... [the] claim ... immediately before his death." Id. at 497. Emphasizing the point, the court went on to state that, "the cause of action would need to have existed, or accrued, before [decedent] died." Id. The court then considered whether each element of the legal malpractice claim had accrued before decedent's death to decide whether plaintiff had standing. Id. at 498-500.

Using that same method of analysis, the court finds that plaintiff lacks standing under the state statute. At its core, plaintiff's claim is that defendant breached the MTA by accepting the Plan benefits. A breach of contract claim "accrues at the time of the alleged breach." Pederson v. Am. Lutheran Church, 404

9

N.W.2d 887, 889 (Minn. Ct. App. 1987) (citation omitted). Both parties agree that the MTA was breached, if at all, after Sally Hogen died. Thus, the claim did not accrue until after decedent's death.

Further, the conversion, civil theft, and unjust enrichment claims did not accrue until after decedent died because these claims all similarly stem from defendant's acceptance of the Plan benefits after her death. Because none of plaintiff's claims had accrued at the time of her death, plaintiff lacks standing under Minnesota state law.

Even if plaintiff had standing, however, its claims would fail on the merits for the following reasons.

## IV.  Breach of Contract

Plaintiff's first substantive claim asserts that defendant breached the MTA by accepting the Plan benefits. Plaintiff argues that defendant "obligated himself to waive his right to the retirement account" as part of the MTA. Plaintiff's argument centers on the MTA provision that "[Decedent] will be awarded, free and clear of any claim on the part of [Hogen], all of the parties right, title, and interest in and to the [401(k)] ..." Weber Aff. Ex. 4, at 10. Plaintiff contends that the parties understood the provision to mean that defendant waived any right he had to the value of the account and to any claim as a beneficiary.

10

Defendant counters with several arguments. First, defendant argues that the MTA is unambiguous because it makes no mention of beneficiary status while explicitly referencing rights to 401(k) distributions. Thus, according to defendant, there was no agreement to waive his right to remain beneficiary. Alternatively, defendant argues that if the MTA is ambiguous, his testimony about the MTA negotiations and decedent's failure to remove defendant as beneficiary for seventeen years demonstrates that the parties intended to permit her to retain him as beneficiary, which she did. Finally, defendant argues that plaintiff has put forward no evidence to support its assertion that he waived his right to remain the beneficiary.[6]

Marital termination agreements are binding contracts, and breaching an MTA constitutes breach of contract. Cf. Karon v. Karon, 435 N.W.2d 501 (Minn. 1989) (approaching a marital termination issue as a contract issue). "A breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." Lyon Financial Services, Inc. v. Illinois Paper and Copier Co., 848 N.W.2d 539, 543 (Minn. 2014)

---

[6] In support of its arguments, plaintiff largely cites to the amended complaint, but most of those assertions cannot be relied on at summary judgment. See Sornsen v. Wackenhut Corp., No. 01-cv-1967, 2003 WL 1956221, at *2 (D. Minn. Feb. 27, 2003) ("The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.") (citations omitted).

11

(citations omitted). To establish a claim for breach of contract, plaintiff must "show formation of a contract, breach, and resulting damages." Kaplan v. Mayo Clinic, 947 F. Supp. 2d 1001, 1005 (D. Minn. 2013) (citations omitted).

To determine whether a party breached a contract, a court must first interpret the terms of the contract. "[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 325 (Minn. 2003) (citation omitted). The "[i]nterpretation of unambiguous contracts is a question of law for the court, as is the determination that a contract is ambiguous." Staffing Specifix, Inc. v. TempWorks Management Services, Inc., 913 N.W.2d 687, 692 (Minn. 2018); see also In re Estate of Rock, 612 N.W.2d 891, 894 (Minn. Ct. App. 2000).

"The terms of a contract are ambiguous if they are susceptible to more than one reasonable interpretation." Staffing Specific, Inc., 913 N.W.2d at 692. The interpretation of ambiguous language is a question of fact, and "extrinsic evidence may be admitted to resolve the ambiguity." In re Estate of Rock, 612 N.W.2d at 894 (citing Anderson v. Archer, 510 N.W.2d 1, 3-4 (Minn. Ct. App. 1993)).

Minnesota courts have previously found divorce agreement provisions similar to the one at issue here ambiguous. See id.

12

(finding a provision stating "all right, title and interest in and to any and all pension, profit sharing, retirement or savings plans in which they may have an interest, free and clear of any claim or right of the other party" ambiguous); Larsen v. Northwestern Nat'l Life Ins. Co., 463 N.W.2d 777 (Minn. Ct. App. 1990) (using extrinsic evidence to interpret a provision awarding each party "all right, title and interest in the insurance policies covering his or her respective life").

The court first finds that the language is ambiguous as to the beneficiary designation. Like in Larsen and In re Estate of Rock, the court finds that the provision disclaiming "all right, title and interest in" the retirement account is ambiguous as to whether it covers the beneficiary designation. To resolve the ambiguity, the court considers the available extrinsic evidence.

Defendant stated that he understood the provision to mean that he gave up any interest in Plan distributions but that decedent was free to either retain or remove him as beneficiary. Plaintiff responds only by arguing that the plain language of the MTA demonstrates that defendant waived his right to remain beneficiary. Plaintiff has offered no other evidence, based on personal knowledge and supported by the record, to refute defendant's account of Sally Hogen's and his understanding of the contract.

13

Based on the evidence available, the court finds that defendant did not agree to waive his right to remain the beneficiary. Therefore, defendant did not breach a contract with decedent by accepting the Plan benefits after her death.

**V.   Unjust Enrichment**

Plaintiff's next claim is that the defendant would be unjustly enriched by retaining decedent's Plan benefits. "Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 838 (Minn. 2012). "To establish an unjust enrichment claim it must be shown that a party has knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." Southtown Plumbing, Inc. v. Har-Ned Lumber Co., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992) (citations omitted).

The elements of an unjust enrichment claim are: "(1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; 3) the defendant retain the benefit although retaining it without payment is inequitable." Zinter v. Univ. of Minn., 799 N.W.2d 243, 247 (Minn. Ct. App. 2011) (citation omitted). Here, plaintiff contends that defendant's retention of the benefits constitutes unjust enrichment because he waived any right to the account proceeds.

14

Defendant argues first that the benefit was not conferred on him by the plaintiff. Defendant asserts that "Minnesota law requires that the benefit be conferred by the plaintiff" and that because Honeywell maintained the retirement account and distributed the benefits to defendant, plaintiff did not confer a benefit. Strategic Energy Concepts, LLC v. Otoka Energy, LLC, No. 16-463, 2019 WL 1409313 (D. Minn. Mar. 28, 2019). In Strategic Energy, plaintiffs alleged unjust enrichment after defendants received investment tax credits from the federal government. Id. at 12. The court denied the claim because the benefit came from the government and not from the plaintiff. Id.

Defendant's reading of Strategic Energy, however, is too expansive. In Strategic Energy, the defendants received the right to tax credits under an agreement with a third party. Id. Plaintiffs' decision to sell its interest allowed defendants the opportunity to obtain the tax credits, but there was otherwise no connection between the parties. Id. In rejecting plaintiffs' arguments, the court noted that the defendants had not received the tax credits from plaintiffs and that plaintiffs would not have been in a better position had defendants not received the credits. Id.

The situation in this case differs. Although a third party, Honeywell, maintained the retirement account, decedent and her estate retained an interest in the account assets. Further,

15

plaintiff suffers harm by payment of the benefits to defendant because the benefits would otherwise revert to the estate. Based on these differences, defendant's argument that he did not receive a benefit from plaintiff, and thus plaintiff cannot maintain an unjust enrichment claim, fails.

Defendant alternatively argues that he did not waive any right to remain the beneficiary and thus his retention of the benefits is not wrongful. The court agrees. As previously discussed, defendant and decedent never agreed that defendant would be removed as beneficiary. As a result, defendant's retention of the benefits is not wrongful, and plaintiff's unjust enrichment claim fails.

**VI. Conversion**

Next, plaintiff claims that defendant's retention of the benefits qualifies as conversion. Conversion is "an act of wilful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." Larson v. Archer-Daniels-Midland Co., 32 N.W.2d 649, 317 (Minn. 1948). Conversion requires that: "(1) plaintiff holds a property interest; and 2) defendant deprives plaintiff of that interest." Williamson v. Prasciunas, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003) (citation omitted).

A plaintiff, however, may not maintain "an independent tort for conduct that merely constitutes a breach of contract." First Integrity Bank, N.A. v. Ohio Cas. Ins. Co., No. 05-2761, 2006 WL

16

1371674, at *6 (D. Minn. May 15, 2006) (citations omitted). Thus, "[a]n independent tort may accompany a breach of contract when the defendant has a legal duty to the plaintiff arising separately from any duty imposed in the contract." Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC, 868 N.W.2d 689, 696 (Minn. Ct. App. 2015). Otherwise, a "plaintiff is limited to damages flowing from such breach." First Integrity Bank, N.A., 2006 WL 1371674, at *6.

Plaintiff argues that defendant is liable for conversion because he retained the Plan benefits despite his alleged waiver of any interest in them. Defendant counters both that he did not accept the benefits wrongfully and that the conversion claim is not independent from the breach of contract claim.

The court agrees with defendant. As previously discussed, defendant did not agree to waive his interest in remaining the Plan beneficiary and therefore did not accept the benefits wrongfully. Further, even if he had waived his interest as part of the MTA negotiations, his later acceptance of those benefits would constitute breach of contract. Because plaintiff may not maintain a conversion claim for "conduct that merely constitutes a breach of contract," its conversion claim fails. Id.

**VII. Civil Theft**

Finally, plaintiff argues that defendant committed civil theft. "Minnesota's civil-theft statute provides that '[a] person

17

who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100% of its value when stolen, whichever is greater.'" Waters v. Cafesjian, 127 F. Supp. 3d 994, 997 (D. Minn. 2015) (quoting Minn. Stat. § 604.14 subdiv. 1). Theft is evaluated under the criminal standard, such that theft is "transferring, concealing, or retaining property 'intentionally and without a claim of right ... with intent to deprive the owner permanently of possession.'" Id. (quoting Minn. Stat. § 609.152, subdiv. (2)(1)).

Plaintiff argues that defendant obtained and continues to retain the Plan benefits improperly and thus is liable for civil theft. Defendant's argument on this claim mirrors his argument against the conversion claim – that the claim is not independent of the breach of contract claim and he did not breach any agreement when he accepted the benefits.

Based on the reasoning applied to plaintiff's conversion claim, the court finds that plaintiff's civil theft claim also fails.

**CONCLUSION**

According, based on the above, **IT IS HEREBY ORDERED that:**

1. Defendant's motion for summary judgment [ECF No. 82] is granted;

2. Plaintiff's motion for summary judgment [ECF No. 78] is denied;

3. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: September 29, 2021

                                      s/David S. Doty
                                      David S. Doty, Judge
                                      United States District Court